IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Hudson Insurance Company | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-02659 |
| | ) | |
| All American Delivery Systems, LLC, | ) | Judge Sharon Johnson Coleman |
| Michael Richardson, Sara Alvey, and | ) | |
| E.A., a minor, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hudson Insurance Company ("Hudson") brings this action against All American Delivery Systems, LLC ("All American"), Michael Richardson ("Richardson"), and Sara Alvey and E.A. (the "Alveys") seeking declaratory judgment. Currently before the Court is Hudson's motion for judgment on the pleadings [31] pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, the Court denies Hudson's motion.

**BACKGROUND**

The following facts are undisputed, unless otherwise noted. Hudson is an insurance company that issued a commercial automobile liability coverage policy to All American on January 25, 2019 ("the Policy"). The Policy creates the duty for Hudson to defend and indemnify an insured entity against suits for damages that fall under the Policy's coverage. The Policy creates two avenues for liability coverage relevant to this suit. First, pursuant to Motor Carrier Coverage Form Declarations ("Declarations"), the Policy covers only those autos described in Declaration Item Three, the "Schedule of Covered Autos You Own." (Dkt. 31-1 at 27). Declaration Item Three lists as covered autos a 2018 Freightliner box truck and a 2018 International Harvester box truck, neither of which are owned by All American. *Id.*

Second, as described under Section I(C) of the Motor Carrier Coverage Form ("Section 1(C)"), the Policy also provides liability coverage for any unowned auto used as a temporary substitute for "a covered 'auto' you own" that is out of service. (Dkt. 31-1 at 30). In its definitions section, which lists words and phrases that "have special meaning throughout the policy," the Motor Truck Cargo Coverage Form defines "temporary substitute auto" as follows:

> "Temporary substitute auto" means any self-propelled vehicle "you" do not own that is used in "your" business with the permission of the owner as a temporary substitute for a self-propelled motor vehicle listed by vehicle identification number in the "declarations" while such self-propelled motor vehicle is out of service… (Dkt. 31-1 at 18).

The policy further designates as an insured anyone occupying a covered auto or a temporary substitute for a covered auto. In addition to these terms, the Policy includes an MCS-90 Endorsement, a form used to demonstrate compliance with federally mandated insurance coverage requirements. (Dkt. 31-1 at 62–63).

On February 18, 2019, Richardson drove a rented 2019 Freightliner truck (the "Rental Vehicle") on behalf of All American. According to the Alveys, Richardson ignored a stop sign while driving in Chicago, Illinois and struck the Alveys within a marked crosswalk (the "Accident"). The two injured pedestrians subsequently filed suit against Richardson and All American in the Circuit Court of Cook County, Illinois. Hudson subsequently filed this action seeking a declaratory judgment that it has no duty to defend or indemnify All American or Richardson under the Policy.

## LEGAL STANDARD

A party can move for judgment on the pleadings once the complaint and answer are filed. *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007) (internal citation omitted). Courts apply the same standard for Rule 12(c) motions as used for motions to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). Thus, the Court views the facts in the light most favorable to the nonmoving party and will grant the motion "only if

2

it appears beyond doubt that [the nonmovant] cannot prove any facts that would support [its] claim for relief." *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). In considering a 12(c) motion, the pleadings consist of the complaint, answer, and any documents included as attachments. *Langone v. Miller*, 631 F. Supp. 2d 1067, 1070 (N.D. Ill. 2009) (Castillo, J.).

## DISCUSSION

Hudson seeks declaratory judgment that the insurance policy it issued to All American does not provide liability coverage for Richardson's use of the Rental Vehicle. Therefore, Hudson claims that it need not defend or indemnify All American or Richardson in the Alveys' suit against them for damages stemming from the Accident. To determine whether the duty to defend exists, the Court assesses whether "facts alleged in the underlying complaint fall even potentially within the policy's coverage." *Altom Transp. Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 421 (7th Cir. 2016) (internal citations omitted). If so, the insurer owes a duty to defend the insured in the underlying action. *Id.* The duty to indemnify is narrower than the duty to defend, applying when the insured's claim "actually falls within the scope of coverage." *Madison Mut. Ins. Co. v. Diamond State Ins. Co.*, 851 F.3d 749, 753 (7th Cir. 2017).

Here, the parties' disagreement turns on the interpretation of the Policy's terms rather than the facts underlying the Accident. The Defendants argue that the Policy covers Richardson's use of the Rental Vehicle on February 18, 2019 under Section 1(C), which provides liability coverage for vehicles used as "a temporary substitute for a covered 'auto' *you own* that is out of service…" (Dkt. 31-1 at 30) (emphasis added). Hudson maintains that coverage does not extend to the Rental Vehicle because All American does not own the autos the Rental Vehicle served to replace, namely, those vehicles listed in the Declarations.

As an initial matter, the Court applies Illinois law to interpret the Policy's terms. When a federal court sits in diversity, it applies the choice-of-law rules of the forum state to determine which

3

state's law applies. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). In interpreting its terms, the Court reads the Policy as a whole and does not isolate definitions in separate documents of a multi-document agreement. *See Heller Fin., Inc. v. Prudential Ins. Co. of Am.*, 371 F.3d 944, 946 (7th Cir. 2004); *see also* Second Restatement of Contracts § 202(2) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together."). Ambiguous or inconsistent terms are construed in favor of the insured and against the insurer. *Crackel v. State Farm Ins. Co.*, 2014 IL App (5th) 130366, ¶ 14.

Section 1(C) cannot reasonably be read to exclude temporary substitute autos from coverage solely on the grounds that the insured did not hold title to the autos the substitute served to replace. Although Section 1(C) confers coverage to substitutes for *owned* covered autos, the Policy does not define ownership. Reading the Policy as a whole and construing ambiguities in favor of the insured, the Policy's broad use of the term shows that it does not adopt a technical definition of ownership. *Id*; *see also Market St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 952 (7th Cir. 2020). First, the Hired Auto Physical Damage Coverage provision in the Motor Carrier Coverage Form states that "any covered 'auto' you lease, hire, rent or borrow is deemed to be a covered 'auto' you own." (Dkt. 31-1 at 39). Further, in its description of covered auto designation symbols, the Policy defines non-owned autos as those vehicles you do not own, lease, hire, rent or borrow. (Dkt. 31-1 at 29). Applying this definition in the converse, leased, hired, rented, or borrowed vehicles can be considered owned autos under the Policy, plausibly subjecting the Rental Vehicle to liability coverage as a temporary substitute auto under Section 1(c).

The Motor Cargo Coverage Form's definition of "temporary substitute auto" supports this view as it does not impose a technical ownership requirement but rather covers temporary substitutes for any vehicle "listed by vehicle identification number in the 'declarations'…" (Dkt. 31-1 at 18). Hudson argues that this definition does not apply as it is found in the Motor Cargo Coverage

4

Form and not the Motor Carrier Coverage Form. The Court rejects this argument as it does not isolate definitions appearing in separate documents of an agreement. *See Heller Fin. Inc.*, 371 F.3d at 946. Further, the Motor Carrier Coverage Form fails to define temporary substitute auto under its definitions section, which the Court takes as persuasive evidence that the Motor Cargo Coverage Form definition applies throughout the Policy. *See Berg v. New York Life Ins. Co.*, 831 F.3d 426, 429 (7th Cir. 2016) (finding that when a policy specifically defines a term, that meaning controls).

Finally, there is no evidence that the parties intended to exclude from coverage temporary substitutes for unowned vehicles only. Common sense suggests otherwise. *Holmes v. Godinez*, 991 F.3d 775, 783 (7th Cir. 2021) (citing *Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 860 (7th Cir. 2002) (holding that courts must construe contracts to avoid absurd results).

The Court need not address Defendants' argument as to the MCS-90 Endorsement because it rules in Defendants' favor on the interpretation of the Policy's coverage. *See McComb v. Nat'l Cas. Co.*, 994 F. Supp. 2d 918, 922 (N.D. Ill. 2013) (Grady, J.) (explaining that the MCS-90 Endorsement only applies where the underlying insurance policy does not provide coverage for the motor carrier's accident).

**Conclusion**

For the reasons stated above, the Court denies Plaintiff's motion for judgment on the pleadings [31].

**IT IS SO ORDERED.**

Date: 1/4/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

5